## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

Alexander H.,                                )
                                             )
           Plaintiff,            )
                                             )     Case No. 20 CV 50107
v.                                           )
                                             )     Magistrate Judge Lisa A. Jensen
Kilolo Kijakazi,[1]                          )
Acting Commissioner of Social Security,      )
                                             )
           Defendant.            )

## MEMORANDUM OPINION AND ORDER

Plaintiff Alexander H. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying him disability insurance benefits. The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, Plaintiff's motion for summary judgment is granted, the Commissioner's motion is denied, and the case is reversed and remanded for further proceedings consistent with this opinion.

### I. Background

Plaintiff's mother filed an application for supplemental security income benefits on his behalf on December 6, 2016[2] with an alleged onset date of January 1, 2005. Plaintiff appeared and testified at a hearing before an Administrative Law Judge ("ALJ") in January 2019. The ALJ also

---

[1] Kilolo Kijakazi has been substituted for Andrew Marshall Saul. Fed. R. Civ. P. 25(d).
[2] At the time of the filing of the SSI application, Plaintiff was less than a month away from the age of 18. However, because the earliest entitlement to SSI benefits is the filing date, the issue is whether Plaintiff was disabled under the adult standards of disability. Plaintiff's appeal, therefore, challenges solely the ALJ's decision regarding his eligibility for adult disability benefits.

heard testimony from Plaintiff's mother and a vocational expert. In March 2019, the ALJ issued an opinion denying Plaintiff's claims.

The ALJ found that Plaintiff had the following severe impairments: recurrent arrhythmias; borderline intellectual functioning; depression/bipolar disorder; personality disorder, attention deficit hyperactivity disorder; intermittent explosive disorder; autism disorder; and disruptive mood dysregulation disorder. R. 20, 27. The ALJ determined that, since attaining the age of 18, Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listing. R. 27. He went on to find that Plaintiff could engage in light work except he could frequently perform all postural movements; perform simple, routine, and repetitive tasks; and could frequently interact with supervisors, co-workers, and the public. *Id*. Plaintiff appealed the ALJ's decision, and the Appeals Council denied his request for review in January 2020. Plaintiff appealed the ALJ's order to this Court in March 2020.

## II. Standard of Review

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id*. Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971); *see Lothridge v. Saul*, 984 F.3d 1227 (7th Cir. 2021). The Court's review of the ALJ's decision "is deferential; we will not reweigh the evidence or substitute our judgment for that of the ALJ." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). Although an ALJ need not specifically address every piece of evidence, they must provide a "logical bridge" between the evidence and their conclusions. *Butler v. Kijakazi*, 4 F.4th 498 (7th Cir. 2021).

### III. Discussion

Plaintiff argues that the ALJ erred by: (1) failing to build a logical bridge to his determination that Plaintiff did not meet or equal Listing 12.05B; (2) cherry-picking evidence to support his rationales finding moderate limitations in each of the four areas of mental functioning; and (3) failing to build a logical bridge to his determination that Plaintiff's moderate limitations translated to the RFC provided.

### <u>Listing Analysis</u>

A claimant is eligible for benefits if he has an impairment that meets or equals an impairment found in the listing of impairments. 20 C.F.R. § 404.1520(d). The listings specify the criteria for impairments that are considered presumptively disabling. 20 C.F.R. § 404.1525(a). A claimant may also demonstrate presumptive disability by showing that his impairments are accompanied by symptoms that are equal in severity to those described in a specific listing. 20 C.F.R. § 404.1526(a). Therefore, at step three of the sequential evaluation process, in "considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)).

Listing 12.05B addresses the requirements to be found disabled due to an intellectual disorder. Specifically, Listing 12.05B requires: (1) significantly subaverage general intellectual functioning evidenced by a full scale (or comparable) IQ score of 70 or below; (2) significant deficits in adaptive functioning currently manifested by extreme limitation in one, or marked limitation of two, of the four areas of mental functioning;[3] and (3) evidence about current

---

[3] The four areas of mental functioning are understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

intellectual and adaptive functioning and about the history of the disorder demonstrates or supports the conclusion that the disorder began prior to the claimant's attainment of age 22. 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

### A. Logical bridge for Listing 12.05B

Plaintiff argues that the ALJ failed to provide a logical bridge to his conclusions regarding the moderate limitations the ALJ found in each of the four areas of adaptive functioning because he failed to provide any analysis at step 3 of the sequential evaluation. Instead, Plaintiff contends, the ALJ articulated his rationales only at steps 4 and 5. Pl.'s Br. at 10, Dkt. 20. Defendant asserts that the Seventh Circuit has consistently held that it will not discount the step 3 discussion simply because it appears elsewhere in the decision. Def.'s Resp. at 4, Dkt. 27; *see Zellweger v. Saul*, 984 F.3d 1251, 1252 (7th Cir. 2021); *Jeske v. Saul*, 955 F.3d 583, 589-90 (7th Cir. 2020). Defendant is correct; the ALJ did not err by elaborating on his analysis in a later part of the written decision.

### B. Cherry-picking evidence for Listing 12.05B

The ALJ conceded that Plaintiff had an IQ score of 70 but found that Plaintiff had only moderate limitations in all four areas of adaptive functioning. Plaintiff argues that the rationales the ALJ provided regarding his findings of moderate limitations relied on cherry-picking the record and ignoring lines of evidence which support Plaintiff's position. Pl.'s Br. at 10, Dkt. 20. Defendant argues that, although Plaintiff generally disagrees with how the ALJ weighed evidence in assessing the degree of limitation in the mental functioning areas, courts cannot reweigh evidence under substantial evidence review. He asserts that the ALJ was only required to minimally articulate his consideration of the evidence and was not obligated to address every piece of evidence. Def.'s Resp. at 7, Dkt. 27.

While it is true that the ALJ is not required to discuss every piece of evidence in the record, "[a]n ALJ cannot simply cherry-pick facts supporting a finding of non-disability while ignoring evidence that points to a disability finding" because by doing so, the ALJ fails to support his or her conclusion of non-disability with substantial evidence. *Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020). An ALJ improperly cherry-picks evidence not only when the ALJ completely disregards evidence supporting a finding of disability, but also when the ALJ "emphasize[s]" and "overstate[s] the evidence" and "overlook[s], or at least did not acknowledge" facts that support a finding of disability. *Lothridge*, 984 F.3d at 1234; *see also Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020) (reversing and remanding an ALJ opinion that "highlight[ed]" and "made much of the fact[s]" supporting a finding of non-disability but "discounted" and "ignor[ed]" evidence to the contrary"). As explained in further detail below, the Court finds that the ALJ did cherry-pick with respect to his analyses in all four areas of functioning.

### 1. Understanding, remembering, or applying information

With respect to understanding, remembering, or applying information, the regulation states:

> This area of mental functioning refers to the abilities to learn, recall, and use information to perform work activities. Examples include: understanding and learning terms, instructions, procedures; following one- or two-step oral instructions to carry out a task; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgment to make work-related decisions.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

> With respect to this area of functioning, the ALJ wrote:

> In understanding, remembering, or applying information, the claimant has a moderate limitation consistent with the ability to perform simple, routine, and repetitive tasks. The claimant graduated high school with special education assistance. He can make simple foods for himself. He can drive a car, as he passed

> driver's education class, but he does not have a driver's license yet. The claimant's mother had concerns about the claimant giving all his money to his girlfriend on August 21, 2017, yet Bridgeway records dated September 2017 reflect the claimant's girlfriend being pregnant.

R. 29 (internal citations omitted).

Plaintiff challenges several aspects of the ALJ's assessment of this area of functioning. Plaintiff first points out that the preface to Listing 12.05 states that the ALJ should try to obtain information from school sources to assess how the mental disorder affects the claimant's ability to function. Plaintiff complains that the ALJ relied on his completion of course work for high school and driver's education but disregards the wealth of evidence supporting the significant accommodations he received while in school. Pl.'s Br. at 10-11, Dkt. 20. Specifically, Plaintiff takes issue with the ALJ's reasons for assigning the teacher questionnaire little weight and the fact that he focuses on it solely within the evaluation of the childhood domains. *Id*. at 11-12; *see* R. 22.

With respect to Plaintiff's challenge to the ALJ's assignment of weight to the teacher questionnaire, the Seventh Circuit has held that a reviewing court should affirm an ALJ's assignment of weight if it is supported by substantial evidence because the court should not reweigh the evidence or substitute its judgment for that of the ALJ's. *Anders v. Saul*, 20-3429, 2021 WL 2396236, at *3 (7th Cir. June 11, 2021). Here, the ALJ's reasoning included that the teacher noted obvious to serious problems across multiple functional areas but did not explain the findings or support them with examples and that she "did not even know if the claimant took medication." R. 22. The Court finds that these are adequate reasons to discount the teacher questionnaire and, therefore, affirms the ALJ's assignment of weight to it.

More broadly, however, Plaintiff argues that the ALJ cherry-picked information to focus on "positive educational evidence" while ignoring significant evidence like that found in Plaintiff's individualized education plan (IEP). Pl.'s Br. at 12, Dkt. 20. Plaintiff's IEP had several

contributors, including Plaintiff's general education and special education teachers. R. 387-411. The IEP details that Plaintiff was enrolled in smaller special education courses for English, Functional Math, Directed Studies, and Modern Biology, and he was receiving educational accommodations within the general education curriculum for Industrial Technology, Physical Education, and Health classes. R. 388. The IEP also notes that Plaintiff's deficits affected his basic reading skills, reading comprehension, reading fluency, math computation, math problem solving skills, and written expression, and that his deficits could impact his post-secondary goals, given that reading and math are essential life skills. R. 389.

Despite the potential relevance of the above information to an analysis of Plaintiff's ability to understand, remember, or apply information, the ALJ did not mention it. He did refer to the IEP in the section of his decision concerning the childhood standard of disability but, even then, he does not discuss these deficits. *See* R. 21. Given that the regulation indicates that the Agency will try to obtain information from school sources when the claimant has recently attended school, it is unclear why the ALJ did not include this evidence in his assessment of Plaintiff's mental functioning under the adult standard of disability. By failing to provide any explanation or discussion of this educational evidence, the ALJ ignored an entire line of evidence contrary to his findings relating to understanding, remembering, or applying information. *See Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) ("[T]he ALJ may not ignore an entire line of evidence that is contrary to the ruling . . . Otherwise it is impossible for a reviewing court to tell whether the ALJ's decision rests upon substantial evidence.") (citation omitted).

In addition to ignoring the educational evidence, the ALJ failed to address relevant findings from Plaintiff's consultative examination ("CE") performed by Dr. Peter Thomas in February 2017. R. 502-07. The ALJ does not mention Dr. Thomas's findings in his analysis of any of the

four areas of functioning. While the ALJ discussed the CE generally in his summary of the records, he did not address the specific findings that Dr. Thomas makes. R. 28. Notably, Dr. Thomas found that in the area of "working memory" Plaintiff's abilities were in the "extremely low range" indicating that Plaintiff scored better than only 1% of his peers in this area. R. 504. Moreover, Plaintiff's overall thinking and reasoning abilities exceeded only 2% of individuals his age; his verbal reasoning abilities exceeded only 9% of his peers; his nonverbal reasoning abilities exceeded only 6% of his peers; and his ability to process simple or routine visual material without making errors exceeded only 4% of his peers. R. 503-05. These findings directly relate to understanding, remembering, or applying information, but the ALJ inexplicably chose not to address these findings, nor did he provide any explanation of his decision to disregard them in his assessment of this area of functioning. *See Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003) (criticizing an ALJ's failure to consider a plaintiff's "strongest piece of evidence supporting" his claim for benefits under a listing).

Based on the evidence detailed above, it is clear that the ALJ cherry-picked evidence and ignored certain lines of evidence in order to support his conclusion that Plaintiff had only a moderate limitation in understanding, remembering, or applying information. Accordingly, the Court finds that the ALJ's conclusion is not supported by substantial evidence and remand is warranted.

### 2. Interacting with others

With respect to interacting with others, the regulation states that:

This area of mental functioning refers to the abilities to relate to and work with supervisors, co-workers, and the public. Examples include: cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions,

criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

Regarding this area of functioning, the ALJ stated:

In interacting with others, the claimant has a moderate limitation in line with a limitation to frequent interaction with supervisors, co-workers, and public. The claimant argues with his mother at doctor appointments. He testified he used to break things and punch holes in walls due to anger. He testified he lived with his mother, but he also went to his girlfriend's house. He said his mother takes him over to his girlfriend's house, or his girlfriend will pick him up to go over to her house. Although the claimant reported spending a lot of time alone and wanting more friends, he gets along well with his girlfriend of several years.

R. 29 (citations omitted).

Plaintiff argues that the ALJ improperly dismissed his violent outbursts and talking inappropriately as a thing of the past. Yet, he argues, despite having received extensive clinical counseling and assistance with job counseling, Plaintiff was still reporting ongoing symptoms. Pl.'s Br. at 13-14, Dkt. 20. This Court agrees with Plaintiff as to both issues.

The ALJ stated that Plaintiff "*used* to break things and punch holes in walls due to anger." R. 29 (emphasis added). The ALJ appears to be relying on Plaintiff's testimony that he had not punched holes or broken things in "a couple years." R. 50. The Court is troubled by the ALJ's decision to rely solely on Plaintiff's testimony on this topic. As an initial matter, there is an astonishing amount of evidence in the record demonstrating that Plaintiff had a habit of presenting a more positive version of a story than what was reported by an authority figure or admitting to some bad behavior and later denying it. R. 336; 448; 450; 463; 515; 595; 596; 614-15; 705-08. Plaintiff's mother corroborated this when she testified that Plaintiff often would change his story at different times but never admits fault. R. 54-55.

Furthermore, there is evidence in the record that his anger-induced violent and destructive behavior remains a current issue. At the hearing in January 2019, Plaintiff's mother testified that he had a long history of violent outbursts (including breaking TVs, windows, and 4-5 phones) and described a recent incident around the holidays where Plaintiff threw her to the floor in a fit of anger. R. 62. In April 2018, Plaintiff's psychiatrist noted that he still had anger issues and that he had broken a door by kicking it in an angry outburst. R. 702. In September 2017, Plaintiff reported to his psychiatrist that he had an angry outburst and broke his phone. R. 708. In March 2017, Plaintiff's counselor noted that Plaintiff had recently shoved his mother in response to a disagreement with her, and that he often shoves and swears at her. R. 529. Although the ALJ referenced these incidents in his decision, he ignored the evidence and its inconsistency with Plaintiff's self-serving testimony as it relates to his assessment of interacting with others. The Court finds that the ALJ's reliance on Plaintiff's statements while not discussing the inconsistent evidence that directly refutes his testimony constitutes impermissible cherry-picking. *See Coleman v. Astrue*, 06 C 2280, 2007 WL 2298377, at *8 (N.D. Ill. Aug. 3, 2007) ("[O]ne cannot ignore the fact that the [evidence] and its supposed inconsistency with other evidence were not discussed by the ALJ . . . That will not do. The ALJ failed to address substantial evidence that was contrary to his conclusion.").

The Court also agrees with Plaintiff that the ALJ failed to assess his continuing issues with inappropriate conversations. One of the examples of this area of functioning cited in the regulation is "understanding and responding to social cues (physical, verbal, emotional)," but the ALJ ignored much of the record evidence demonstrating the longstanding nature of Plaintiff's issues in this area. A few months before Plaintiff turned 18, his mother reported having concerns about his social skills and acceptance of social cues during a mental health assessment appointment with

Rosecrance. R. 445. About two-and-a-half years later, Plaintiff's mother testified at the administrative hearing that Plaintiff did not know how to read social cues and is often inappropriate, although he does not feel that he is. When asked to explain what she meant by "inappropriate," she stated that he does not have a filter. As an example, she explained that he talked about the fact that he was no longer a virgin to his 5- and 10-year-old cousins. R. 55. In April 2018, Plaintiff was fired from his job at McDonald's due to being sexually inappropriate towards his female coworkers. Plaintiff's mother reported to the employment specialist ("ES") at Bridgeway that he had done things like this in the past but that he did not realize it was inappropriate behavior. R. 614-15. In October 2018, Plaintiff's supervisor at MOD Pizza informed the ES that Plaintiff had been engaging in inappropriate conversations at work including speaking to his female coworkers inappropriately and talking about doing drugs. R. 593. Plaintiff's ES noted later that month that Plaintiff seemed to be unable to recognize the concerns about his choice of conversation topics with his coworkers. R. 595. Another Bridgeway record noted again that Plaintiff had been reportedly making inappropriate comments to his female coworkers. R. 596. One of the final notes from Bridgeway ES in November 2018 indicated that Plaintiff ultimately was fired from MOD Pizza due in part to being "inappropriate with the staff while at work" and talking about doing drugs and coming to work high. R. 572.

The ALJ did not discuss Plaintiff's problems with inappropriate conversations at work when analyzing the domain of interacting with others. While the ALJ did provide a general discussion of Plaintiff's job history elsewhere in the opinion, that discussion suffers from the same cherry-picking that permeates the ALJ's entire decision. For example, regarding Plaintiff's firing in April 2018 following reports of being sexually inappropriate with female co-workers, the ALJ stated: "Importantly, during this period, the claimant was off his Adderall medication." R. 30.

However, this does not explain why Plaintiff has behaved in this manner at other points in time, such as during his employment with MOD Pizza, when there were no issues with his access to Adderall. The ALJ's failure to address head on the Plaintiff's inappropriate conversations with coworkers is another example of improper cherry-picking. *See Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994) ("Although a written evaluation of each piece of evidence or testimony is not required, neither may the ALJ select and discuss only that evidence that favors his ultimate conclusion.").

The ALJ also failed to discuss most of Plaintiff's problematic social interactions with people other than his mother and his coworkers. As cited above, examples of interacting with others can include "initiating or sustaining conversation," "responding to requests, suggestions, criticism, correction, and challenges," and "keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness." The record is replete with such examples. Less than one week before the administrative hearing, Plaintiff's psychiatrist noted that he had recently experienced meltdowns and commented that he had been fired from a job for going through his manager's things at work. R. 698. In October 2018, Plaintiff's ES attempted to discuss the allegations that Plaintiff was having inappropriate conversations at work, but Plaintiff denied the allegations, was not willing to own up to anything, and became angry about what was being said. R. 596. During many of Plaintiff's Bridgeway appointments in 2018, the ES noted that Plaintiff had an attitude, did not want to take the ES's advice or listen to what was being said, or became angry with the ES. R. 582, 583, 595, 596, 609, 611, 613, 616. Additionally, throughout the course of Plaintiff's therapy appointments at Rosecrance, his counselor often noted that he struggled to stay attentive and engaged in the conversation. R. 447, 455, 459, 463, 464, 526, 530, 532, 536, 680. By neglecting to account for or provide any explanation of nearly all of these social

interactions with others, the ALJ ignored an entire line of evidence that is contrary to his finding. *See Herron*, 19 F.3d at 333 ("Although a written evaluation of each piece of evidence or testimony is not required, neither may the ALJ select and discuss only that evidence that favors his ultimate conclusion.").

The ALJ's failure to account for the above referenced evidence supports Plaintiff's argument that the ALJ improperly cherry-picked evidence to support his conclusion that Plaintiff had only a moderate limitation in interacting with others. As a result, the Court finds that the ALJ's conclusion is not supported by substantial evidence and remand is warranted. On remand, the ALJ should consider the evidence above concerning violent outbursts, the issues involving inappropriate conversations, and Plaintiff's interactions with others in his evaluation of this area of functioning.

### 3. Concentrating, persisting, or maintaining pace

With respect to concentrating, persisting, or maintaining pace, the regulation states that:

> This area of mental functioning refers to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

In his assessment of this area of functioning, the ALJ wrote:

> With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. He can perform simple, routine, and repetitive tasks. The claimant can make himself something to eat, such as sandwiches or pizza rolls. He does not have a driver's license yet, with reports of refusing to drive a car after his father yelled at him for getting into an accident. When taking medication, he can perform simple tasks consistently.

R. 30 (internal citation omitted).[4]

With respect to the ALJ's reference to Plaintiff's ability to make himself something to eat, Plaintiff generally challenges the ALJ's reliance on his ability to engage in simple activities because of the assistance he required to be able to complete those simple activities. Pl.'s Br. at 13, Dkt. 20. However, a plaintiff's ability to cook or prepare meals can be a relevant consideration for an ALJ's analysis of concentrating, persisting, or maintaining pace. *See Stephanie N. v. Commr. of Soc. Sec.*, 419CV04122SLDJEH, 2020 WL 7234157, at *8 (C.D. Ill. July 29, 2020), *report and recommendation adopted sub nom., Stephanie N. v. Saul*, 419CV04122SLDJEH, 2020 WL 6710421 (C.D. Ill. Nov. 16, 2020); *Ross v. Saul*, 19-CV-969-JDP, 2020 WL 4199672, at *2 (W.D. Wis. July 22, 2020); *Shirley R. v. Commr. of Soc. Sec.*, 118CV01050JESJEH, 2019 WL 654340, at *8 (C.D. Ill. Jan. 29, 2019), *report and recommendation adopted sub nom. Russell v. Berryhill*, 18-CV-1050-JES-JEH, 2019 WL 652992 (C.D. Ill. Feb. 15, 2019). Plaintiff does not point to any record evidence that he required assistance in preparing meals. As such, the ALJ's reliance on the ability to prepare simple meals was not improper.

However, there is a wealth of evidence in the record that tends to support that Plaintiff has problems with focus/attention and task completion, which directly relate to this area of functioning. First, the record reflects that Plaintiff has had a long, constant history of issues with focus and attention. In the function report from January 2017, Plaintiff admitted having issues with concentration and not finishing what he starts. R. 260. Consultative examiner Dr. Thomas reported that test results indicated Plaintiff's ability to sustain attention, concentrate, and exert mental control was in the extremely low range, exceeding only 1% of his peers. R. 504. (These findings

---

[4] The Court is uncertain as to the significance of Plaintiff's refusal to drive a car with respect to the ALJ's assessment of this area of functioning. Because neither Plaintiff nor Defendant addresses this in their briefs, neither will the Court address it.

were made despite Plaintiff being on extensive medications, thus ostensibly negating the ALJ's conclusion that when on his medication he can complete simple tasks consistently.) A significant portion of Plaintiff's counseling treatment notes from Rosecrance reflect that he struggled with staying focused and being attentive during the sessions. R. 447, 455, 459, 463, 464, 526, 530, 532, 536, 680. At his initial appointment at Aspen Counseling, the clinician observed that Plaintiff was easily distracted. R. 696. While receiving job placement assistance from Bridgeway, Plaintiff's ES noted nearly every month that Plaintiff struggled with focus and attention during their appointments. R. 572, 577, 593, 595, 609, 612, 613, 619, 628. Additionally, at the end of 2018, Bridgeway noted that one of the reasons he was fired from his third job was due to being on his phone on multiple occasions while working. R. 572. Finally, at the administrative hearing in 2019, both Plaintiff and his mother testified that Plaintiff struggles with getting too distracted. R. 45-47, 56. The above noted difficulties occurred at times when Plaintiff was not noted to be off his medications.

Evidence from the record demonstrates that Plaintiff has long struggled with task completion, as well. In Plaintiff's function report, he conceded that he had issues with completing tasks and that he does not finish what he starts. R. 260. When Plaintiff was receiving assistance from Bridgeway, the ES noted on numerous occasions that Plaintiff did not complete the "homework" he was asked to do to prepare for their appointment. R. 582, 583, 613, 617, 619. Further, while employed at his third and final job towards the end of 2018 (again while on his medication) Plaintiff's supervisor called the ES several times to report that Plaintiff had not been staying on pace and that he was not finishing his assigned tasks. R. 572, 593, 594, 595, 596.

As shown above, there is a significant amount of highly relevant evidence that the ALJ failed to account for in his 4-sentence assessment of concentrating, persisting, or maintaining pace.

It is particularly difficult to understand why the ALJ did not discuss any of the notes from Bridgeway's ES, given that those were the only records aside from Plaintiff's testimony that contained information about Plaintiff's job-related behaviors. The Court finds that the ALJ ignored an entire line of evidence that is contrary to his findings, making his conclusion unsupported by substantial evidence. Accordingly, remand is warranted.

### 4. Adapting or managing oneself

With respect to adapting or managing oneself, the regulation states that:

> This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

> Regarding this area of functioning, the ALJ stated:

> As for adapting or managing oneself, the claimant has experienced a moderate limitation, suggesting he can perform simple work-related decisions. When feeling anger, he will go for a walk to calm down, and he said he had not broken anything for a while, maybe a couple of years. He said he took his medication and had been getting better with getting along with others. He said it had been awhile since he thought to hurt himself. He also testified he did dishes and laundry. In February 2017, the claimant described a typical day when not in high school, as hanging out with his friends, mostly his girlfriend, watching television and playing video games. He said he helped with vacuuming and cleaning his room. He reported showering daily.

R. 30.[5]

---

[5] Although the ALJ included that Plaintiff does the dishes, this was not Plaintiff's testimony and nowhere in the record does it indicate that Plaintiff does the dishes or has ever done them as part of his chores. Moreover, the Court is uncertain as to the significance of the testimony about helping out with chores as it relates to this area of functioning. However, because neither Plaintiff nor Defendant addresses this in their briefs, neither will the Court address it.

Plaintiff contests the ALJ's reliance on Plaintiff's testimony that his medication helps him get along with others better. He points out that, despite receiving extensive clinical counseling and having his medication managed by several different medical professionals over the years, he was still experiencing ongoing symptoms. Pl.'s Br. at 13-14, Dkt. 20. As detailed in the "interacting with others" section, the record reflects a significant amount of evidence that Plaintiff was consistently reacting with violent outbursts of anger, engaging in inappropriate conversations, and initiating problematic social interactions with individuals in all types of settings. This evidence contradicts the ALJ's conclusion that Plaintiff's medication helps him get along with others and, as such, the ALJ should have accounted for it.

Additionally, the ALJ relied on Plaintiff's testimony that he had not broken anything for "a couple of years." As the Court previously discussed, the ALJ's reliance on this testimony from Plaintiff ignores the evidence in the record indicating that Plaintiff frequently shared inaccurate information about such incidents and that this long-term problem has actually not been eradicated. The Court finds that the ALJ cherry-picked evidence to support his conclusion about Plaintiff's limitation in this area and, as such, it is not supported by substantial evidence. *See Coleman*, 2007 WL 2298377, at *8.

Finally, the ALJ chose to disregard the evidence that Plaintiff had problems distinguishing between acceptable and unacceptable work performance which, as noted above, is an example of adapting and managing oneself. As explained in the "interacting with others" section, the record shows Plaintiff has a history of engaging in inappropriate conversations with others, especially his coworkers, and is unable to recognize the concerns others have about those inappropriate conversations. This also applies to adapting or managing oneself; the ALJ did not confront the evidence showing that Plaintiff has problems distinguishing between acceptable and unacceptable

17

behavior at work. The Court finds that ignoring this line of evidence constitutes impermissible cherry-picking such that the ALJ's conclusion is not supported by substantial evidence. As a result, remand is warranted.

In sum, "[the Court does] not state that the ALJ's view of the facts is ultimately wrong; [it] simply holds that [his] apparent selection of only facts from the record that supported [his] conclusion, while disregarding facts that undermined it, is an error in analysis that requires reversal." *Scrogham v. Colvin*, 765 F.3d 685, 699 (7th Cir. 2014).

**5.    State agency consultants**

The Commissioner argues that the ALJ's finding that Listing 12.05B was not met was supported by both state agency medical opinions and those opinions are enough to constitute substantial evidence supporting the listing analysis. This Court disagrees. First, nowhere in his opinion did the ALJ state that he is relying on the state agency physicians' opinions to support his Listing analysis with regard to the adult listings.[6] In fact, there is some indication that the ALJ was not necessarily relying on the state agency physicians' opinions with regard to the adult listings. The ALJ noted that he gave the state agency opinions only "some weight" as the "opinions predate the expanded hearing level record, including updated medical records and hearing testimony." R. 31. The state agency consultants' opinions were rendered 4 and 7 months after Plaintiff turned 18 and nearly two years before the hearing before the ALJ. In other words, the state agency doctors conducted their assessments of Plaintiff's adult functioning without the benefit of a significant portion of the record. Thus, the ALJ's decision to accord only some weight to the state agency physicians' opinions based on the inability of these physicians to evaluate updated records

---

[6] In contrast, the ALJ did specifically state that he relied on the state agency physicians to support his finding that Plaintiff did not meet the Listings prior to obtaining age 18. R. 22.

undermines the Commissioner's argument that they provided substantial evidence to support the ALJ's opinions.

Indeed, it would have been improper for the ALJ to rely on the state agency physicians' opinions that were based on outdated records. *See Moreno v. Berryhill*, 882 F.3d 722, 728-29 (7th Cir. 2018) (state agency physician's analysis was "stale" and warranted a new mental health assessment because later treatment notes bearing directly on criteria that the state agency physician had considered could have altered the state agency physician's conclusion about the plaintiff's mental disorder). Here, the state agency physicians did not have record of the following when they issued their opinions:

- August 2017 records indicating Plaintiff broke his phone in another angry outburst and later denied the event, R. 705, 708;

- December 2017 records explaining what led Plaintiff to be fired from his first job, R. 605-06;

- April 2018 records indicating Plaintiff's inappropriate behavior that led to him being fired from his second job, R. 614-15;

- April 2018 record indicating Plaintiff had recently kicked at a door and broke it in an angry outburst, R. 702;

- October 2018 records detailing several of the problem behaviors Plaintiff was exhibiting at his third job, R. 593-96;

- November 2018 records demonstrating Plaintiff's inappropriate behavior at his third job that led to him being fired, R. 752;

- Records from Plaintiff's appointments detailing his issues with concentration and focus, R. 577, 594, 595, 609, 612, 613, 619, 628, 705;

- Records demonstrating Plaintiff's frequent attitude/anger problem with authority figures, R. 582, 583, 595-96, 711;

- Records from various appointments showing Plaintiff continued to be argumentative with his mother, R. 698, 700, 701, 711, 713; and

- Records from Plaintiff's appointments at Bridgeway demonstrating he regularly struggled with task completion, R. 582, 586, 595, 609, 611, 612, 613, 617, 619, 627.

The above evidence is significant, especially for purposes of analyzing limitations in the four areas of mental functioning. The Court finds that these documented behaviors could have altered the state agency physicians' conclusions about Plaintiff's limitations in the four areas of mental functioning. *See Moreno*, 882 F.3d at 729 ("This documented history of aggressive behavior could have changed the picture so much that Dr. Wharton would have concluded that Mr. Moreno was more than mildly limited in social functioning.") (internal quotation and citation omitted). Therefore, to the extent the ALJ relied on the state agency consultants' opinions to support his opinion regarding Listing 12.05B, such reliance was not supported by substantial evidence and warrants remand.

**Logical bridge for the RFC**

Because the Court is remanding the case on the above stated issues, the Court finds it unnecessary to address the remaining RFC argument. However, because the ALJ will be re-evaluating the evidence with respect to whether Plaintiff met Listing 12.05B, the Court expects that he will also do so with respect to Plaintiff's RFC.

**IV. CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment is granted, the Commissioner's motion is denied, and the case is reversed and remanded for further proceedings consistent with this opinion.

Date:  September 29, 2021

By: _____
Lisa A. Jensen
United States Magistrate Judge